UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN STATES INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, <br><br> Defendant. | No. 2:12-cv-01489-MCE-CKD <br><br> **MEMORANDUM AND ORDER** |

     Through the present lawsuit, Plaintiff American States Insurance Company ("Plaintiff") seeks redress from Defendant Insurance Company of the State of Pennsylvania ("Defendant"), alleging that Defendant is responsible for some or all of the payment of insurance defense costs incurred for its insured, Sierra Pacific Industries ("Sierra"). Both Plaintiff and Defendant had issued insurance policies covering Sierra. Plaintiff's Complaint asserts common law claims of declaratory relief, equitable subrogation and equitable contribution against Defendant, and seeks reimbursement for some or all of the defense costs incurred by Plaintiff in defending lawsuits filed in the aftermath of a 2007 wildfire known as the Moonlight Fire. The jurisdiction of this Court is premised on diversity of citizenship pursuant to 28 U.S.C. § 1332.

Presently before the Court is Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.[1]  For the reasons set forth below, Defendant's Motion to Dismiss will be granted in part and denied in part.[2]

## BACKGROUND[3]

In February 2007, Sierra obtained rights to a timber harvesting operation on a parcel of land in Plumas County, California.  Sierra then hired Howell's Forest Harvesting ("Howell") "to perform certain timber harvest operations" on this land under the terms of a logging agreement.  Pl's. Third Am. Compl. ("TAC"), ¶ 6.  Under the terms of the logging agreement, Howell was required to obtain Commercial General Liability ("CGL") insurance and to name Sierra as an additional insured under its CGL policy.

In July 2007, Plaintiff issued CGL insurance to Howell.  Sierra was included as an additional insured under a "Liability Plus Endorsement" page stating that an insured under the CGL policy includes "[a]ny person or organization . . . for whom you are required by written contract, agreement[,] or permit to provide insurance."  (Id. at ¶ 12.)  However, this insurance coverage for Sierra as an additional insured was limited "only to the extent [Sierra] [is] held liable due to: . . . [Howell's] ongoing operations for [Sierra]." (Id.)  Thus, while there is no dispute that Plaintiff's coverage for Sierra was primary in nature, it was limited to Sierra's vicarious liability as to Howell, and Sierra's independent liability was not covered under Plaintiff's CGL Policy with Howell.

///

---

[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

[2] Because oral argument will not be of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Cal. Local R. 230(g).

[3] Unless otherwise noted, the following recitation of facts is taken, sometimes verbatim, from Plaintiff's TAC filed May 24, 2013.  ECF No. 41.

In October 2006, Defendant issued Sierra a commercial umbrella insurance policy that provided both primary and excess coverage. Defendant's policy for Sierra delineates its duty to defend as follows:

> [Defendant] shall have the right and duty to defend any claim or suit . . . when . . .
>
> (a) The applicable limits of insurance of . . . any . . . underlying insurance . . . [has] been exhausted by payment of **claims** or **suits** to which this Policy applies; or
>
> (b) Damages are sought for . . . **property damage** . . . covered by this Policy but not covered by . . . any other underlying insurance providing coverage to [Sierra].

(Id. at ¶ 19 (emphasis in original)). Thus, under clause (a), Defendant's policy provides excess insurance when Sierra is vicariously liable with Howell and Plaintiff's policy limits are exhausted by payment of claims, but Defendant's policy provides umbrella, or primary, insurance under clause (b) when property damage arises from Sierra's non-vicarious liability with Howell pursuant to Plaintiff's CGL policy.

In September 2007, "Howell employees were allegedly operating bulldozers . . . pursuant to the [l]ogging [a]greement [with Sierra]," when a fire ignited nearby that "eventually burn[ed] approximately 65,000 acres in the area." (Id. at ¶ 8.) Sparks caused by Howell's bulldozers allegedly caused the conflagration, which became known as the Moonlight Fire. Multiple lawsuits were filed against both Sierra and Howell as a result of the fire – all of which Sierra tendered to both Plaintiff and Defendant. Plaintiff accepted Sierra's defense in all of the fire-related lawsuits "without a reservation of rights to deny coverage for any damages awarded against Sierra, subject to available policy limits and California law. . . ." (Id. at ¶ 26.) Thus, Plaintiff agreed to defend and indemnify Sierra for not only suits where Sierra was vicariously liable with Howell – which was covered under Plaintiff's CGL policy – but also where Sierra was independently liable.

Because Plaintiff's CGL policy only covered Sierra for vicarious liability with Howell, however, Sierra took the position that Plaintiff had a conflict of interest in defending Sierra. As a result of this conflict, Sierra argued it was entitled to independent counsel. Sierra maintained this stance throughout the lifetime of the fire-related lawsuits – despite the fact that Plaintiff accepted defense of the lawsuits without reservation – and Sierra obtained outside counsel for its defense. At no time did Defendant defend or attempt to defend Sierra in any of the fire-related lawsuits.

In July 2012, the fire-related suits against Sierra settled, exhausting both Plaintiff's and Defendant's respective policy limits. Defendant disputed its defense costs with Sierra, but Defendant and Sierra have settled this dispute. Plaintiff and Sierra also disputed defense costs with one another, but Plaintiff settled that dispute as well and "released all claims against [Sierra] . . . while expressly preserving all [Plaintiff's] rights against [Defendant] with respect to its payments of Sierra's defense costs. . . ." (Id. at ¶ 54.) That leaves remaining only the present controversy between the two insurers with respect to their own respective defense cost obligations.

## STANDARD

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations.

///

However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 556 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing 5 Charles Alan Wright & Arthur R. Miller, supra, at § 1202). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ."

///

Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend).  Not all of these factors merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight."  Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987).  Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment."  Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

**ANALYSIS**

Defendant seeks dismissal of all four of Plaintiff's Causes of Action, and the merits of all four arguments will be discussed, in turn, below.

**A.     Declaratory Relief Re Defendant's Duty to Defend Sierra**

In the First Cause of Action for Declaratory Relief, Plaintiff alleges that Defendant had a primary duty to defend Sierra in the fire-related lawsuits, and Plaintiff seeks a judicial determination to that effect.  Plaintiff argues that Defendant had a duty to defend under several different scenarios, but the Court only addresses Plaintiff's allegation that Defendant had a duty to defend for Sierra's non-vicarious, or independent, liability.

Under Plaintiff's CGL policy with Howell, Plaintiff was responsible to defend Sierra for lawsuits "only to the extent [Sierra] [was] held liable due to: . . . [Howell's] ongoing operations for [Sierra]."  (TAC at ¶ 12.)  Thus, Plaintiff was only required to defend Sierra for lawsuits in which Sierra was vicariously liable with Howell.

1  Conversely, Defendant's umbrella policy stated that "[Defendant] shall have the right and
2  duty to defend any claim or suit . . . when . . . [d]amages are sought for . . . **property**
3  **damage** . . . covered by this Policy but not covered by . . .  any other underlying
4  insurance providing coverage to [Sierra]." (Id. at  ¶ 19 (emphasis in original).)
5  Defendant's umbrella policy therefore covered Sierra for any property damage sought
6  which was not covered by Plaintiff's policy.  According to Plaintiff, Defendant's policy
7  drops down and becomes primary coverage for suits in which Sierra is independently
8  liable for property damage.
9      In the fire-related lawsuits filed against Sierra, the Complaints allege that Sierra
10 could have been independently liable for the fire because of Sierra's responsibility to
11 suspend operations in certain weather conditions.  (See ECF No. 46-1[4].)  Thus,
12 Defendant's duty to drop down and defend as a primary insurer under Defendant's
13 umbrella policy could have been triggered by claims in the fire-related lawsuits.
14 Umbrella coverage like that provided by Defendant in clause (b) of its defense
15 agreement may provide primary insurance coverage for damages not covered by any
16 underlying insurance.  See, e.g., Powerine Oil Co., Inc. v. Superior Court, 37 Cal. 4th
17 377, 398 (2005) ("[T]he policies here . . . are **not** merely intended to operate as excess
18 insurance . . . [T]hese policies provide umbrella coverage, i.e., '**alternative primary**
19 **coverage** as to losses "not covered by" the primary policy.'" ) (emphasis added).  As the
20 Court in Legacy Vulcan Corp. v. Superior  Court, 185 Cal. App. 4th 677 (2010) also
21 explained:
22 ///
23 ///
24 ///
25 ///

---

[4] Plaintiff's request for judicial notice of federal court records cited herein is granted.  A court may take judicial notice of court records.  See MGIC Indem. Co. v. Weisman, 803 F. 2d 500, 504 (9th Cir. 1986); Thomas v. United Air Lines, Inc., No. 2:13-cv-745-MCE-EFB PS, 2013 WL 3490354, at *1 n.1 (E.D. Cal. July 11, 2013).

> Primary insurance provides coverage immediately upon the occurrence of a loss or an event giving rise to liability, while excess insurance provides coverage only upon the exhaustion of specified primary insurance. Insurance policies sometimes include both excess and umbrella insurance. Umbrella insurance provides coverage for claims that are not covered by the underlying primary insurance. An umbrella insurer "drops down" to provide primary coverage in those circumstances. **Thus, a policy that provide both excess and umbrella insurance provides both excess and primary coverage**.

Id. at 692 (emphasis added) (internal citations omitted).

Here, as in Legacy Vulcan, Defendant's policy contains both excess and umbrella coverage, and to the extent its umbrella coverage is invoked that coverage would appear primary. Legacy Vulcan's finding that the umbrella carrier had a primary duty to defend under the umbrella coverage "for claims not within the terms of the coverage of underlying insurance" is instructive for purposes of the present case, and mandates against any finding that Defendant's policy provided no defense obligations, as requested in the First Cause of Action.[5]

Defendant alleges that, because Plaintiff accepted Sierra's defense without reservation and Plaintiff settled its dispute with Sierra with respect to defense costs, Plaintiff waived its right to sue Defendant for recovery of defense costs. However, while not reserving rights against an insured estops an insurer from asserting such grounds to escape coverage of an insured, an insurer's unconditional admission of liability to its insured does not impact that insurer's rights against other insurers.

///
///

---

[5] It should also be noted, as set forth above, that the duty to defend provisions contained in Defendant's policy obligate Defendant to defend either under the "excess" **or** the "umbrella" clauses. In MGA Entertainment, Inc. v. Hartford Ins. Group, 869 F. Supp. 2d 1117 (C.D. Cal. 2012), the Central District found that where the defense clause is disjunctive rather than conjunctive (triggering a duty to defend under either excess or umbrella coverage) a primary duty to defend is imposed on the umbrella carrier. Id. at 1134. While Defendant relies on the decision in Padilla Construction Co. v. Transportation Ins. Co., 150 Cal. App. 4th 984 (2007) in contending otherwise, the duty to defend language at issue in Padilla called for a defense when there was no underlying coverage under both the excess **and** the umbrella coverage. The present case is distinguishable because Defendant's policy uses the disjunctive "or," and therefore provides a broader duty to defend.

See Mitchell, Silberberg & Knupp v. Yosemite Ins. Co., 58 Cal. App. 4th 389, 394-95 (1997).  Moreover, as indicated above, Plaintiff's settlement agreement with Sierra preserved Plaintiff's right to seek reimbursement from Defendant for the defense costs it incurred.

Because, in the light most favorable to Plaintiff, Plaintiff has stated a claim upon which relied can be granted with respect to a primary duty to defend on the part of Defendant, Defendant's Motion to Dismiss Plaintiff's First Cause of Action is denied.

**B.     Declaratory Relief Re Plaintiff Having No Duty to Defend Sierra**

As a Second Cause of Action, Plaintiff alleges that when Sierra refused to accept Plaintiff's counsel and instead hired outside counsel, Sierra breached its contract with Plaintiff, and this breach relieved Plaintiff's duty to defend Sierra.  Plaintiff alleges that, as a result, Sierra was no longer "covered by . . . any other underlying insurance" (Pl's. Compl. at 150), and Defendant had a duty to drop down and defend Sierra, including covering all of Sierra's defense costs relating to vicarious liability for Howell.

However, California courts have repeatedly held that, with respect to insurance policies, "covered" under the plain meaning rule means inclusion within the scope of an insurance policy, and not the act or fact of covering." Ticor Title Inc. Co. v. Employers Ins. of Wausau, 40 Cal. App. 4th 1699, 1709 (1995) (internal quotations omitted); see also Wells Fargo Bank v. California Ins. Guarantee Assn., 38 Cal. App. 4th 936, 948-49 (1995).  Thus, Defendant's duty to drop down and defend Sierra did not trigger when Plaintiff alleges it did not have a duty to defend because of Sierra's alleged breach of contract.  Since Sierra's vicarious liability was "covered" and within the scope of Plaintiff's policy, even where Sierra allegedly breached the policy, Defendant did not have a duty to drop down and defend Sierra due to that purported breach. In other words, the alleged breach of Plaintiff's policy by Sierra did not expand Defendant's obligations under its excess/umbrella policy.

Plaintiff's remedy for such breach was not to recover defense costs from Defendant but instead to recover back from Sierra defense costs it incurred following Sierra's alleged breach. The fact that Plaintiff has already settled its lawsuit with Sierra as indicated above would appear to foreclose that possibility.

The Court cannot find, nor does either party point to, authority in which an insured's breach of a primary insurance policy required an excess insurer to drop down and defend the insured. In the absence of any legal cause of action based on Plaintiff's allegations, Plaintiff fails to state a claim upon which relief can be granted. Thus, Defendant's Motion to Dismiss Plaintiff's Second Cause of Action is granted with leave to amend.

### C.     Equitable Subrogation Against Defendant

Plaintiff concedes in both its Complaint and its Opposition to Defendant's Motion to Dismiss that its claim for relief for equitable subrogation is predicated on its Second Cause of Action and the Court's finding that Plaintiff had no duty whatsoever to defend Sierra as a result of Sierra's alleged breach of contract. Because Plaintiff's cause of action for equitable subrogation is entirely derivative from Plaintiff's Second Cause of Action – which fails as indicated above – Defendant's Motion to Dismiss Plaintiff's Third Cause of Action is granted with leave to amend.

///
///
///
///
///
///
///
///

### D. Equitable Contribution Against Defendant

Plaintiff's Fourth and final Cause of Action seeks equitable contribution from Defendant for the defense costs it incurred in providing Sierra with a defense. "[W]here two or more insurers independently provide primary insurance on the same risk for which they are both liable for any loss to the same insured, the insurance carrier who pays the loss or defends a lawsuit against the insured is entitled to equitable contribution from the other insurer…." Fireman's Fund Ins. Co. v. Maryland Cas. Co., 65 Cal. App. 4th 1279, 1289 (1998). Equitable contribution permits the insurer paying more than its share of defense costs to recoup the excess from the non-contributing carrier, which Plaintiff alleges is Defendant in this matter. Because the Court cannot rule out Defendant's obligation in that regard as discussed above with respect to Defendant's potential duty to defend as a primary carrier, Plaintiff's equitable contribution claim remains viable. Significantly, even Defendant concedes that a finding of any duty to defend on its part may support a potential equitable contribution claim. Def.'s Mot., 19:9-13. Defendant's Motion to dismiss Plaintiff's Fourth Cause of Action, for equitable contribution, must therefore be denied.[6]

### CONCLUSION

For all of the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 42) is DENIED in part and GRANTED in part. The motion is GRANTED with respect to the Second and Third Causes of Action contained in Plaintiff's Third Amended Complaint, but DENIED as to the remaining First and Fourth Causes of Action.

---

[6] As was the case with respect to whether Plaintiff could continue to assert a duty to defend a claim against Defendant despite the fact that both parties had settled with Sierra for Sierra's own defense claims, an insurer's settlement with its insured does not bar a separate action for equitable contribution between the carriers. See Fireman's Fund, 65 Cal. App. 4th at 1301-02 ("[O]ne insurer's settlement with the insured is not a bar to a separate action against that insurer by the other insurer…. for equitable contribution . . . ").

1   Leave to amend on Plaintiff's part is permitted.  Any amended pleading, however, must
2   be filed not later than thirty (30) days following the date of this Memorandum and Order.
3   Failure to file a Fourth Amended Complaint within that time period will result in the
4   Court's dismissal, with prejudice and without further notice to the parties, of the Second
5   and Third Causes of Action contained in the presently operative Third Amended
6   Complaint.
7            IT IS SO ORDERED.
8   Dated:  January 22, 2014

_____
MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT