UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN STATES INSURANCE COMPANY, | No. 2:12-cv-01489-MCE-AC |
| Plaintiff, | |
| v. | ORDER |
| INSURANCE COMPANY FOR THE STATE OF PENNSYLVANIA, | |
| Defendant. | |

On January 7, 2015, the court held a hearing on plaintiff's motion for a protective order. Lisa Pan appeared telephonically on behalf of plaintiff American States Insurance Company and Frank Kaplan appeared on behalf of defendant Insurance Company for the State of Pennsylvania. On review of the motions, the documents filed in support and opposition, upon hearing the arguments of plaintiff and counsel, and good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

FACTUAL BACKGROUND

In February 2007, Sierra Pacific Industries ("Sierra") took part in and won a bid to participate in a timber harvesting operation in Plumas County, California (hereinafter the "Timber Project"). ECF No. 59 at 2. Sierra then hired Eunice Howell, dba Howell's Forest Harvesting ("Howell"), to perform timber harvesting operations for the Timber Project. Id. at 3. Sierra and

Howell entered into an agreement to that effect on March 15, 2007 ("Logging Agreement"). Id. The Logging Agreement required that Howell purchase insurance at its own expense for the agreement's duration. Id.

Plaintiff issued a commercial insurance policy to Howell effective July 5, 2007 to July 5, 2008 (the "American Policy"). Id. at 4. Insurance Company for the State of Pennsylvania ("ISOP" or "Defendant") issued a commercial policy to Sierra, with an effective policy period of October 31, 2006 to October 31, 2007 (the "ISOP Policy"). Id. at 5. The ISOP Policy states, in relevant part: "We will pay on behalf of the insured those sums in excess of the Retained Limit that the insured becomes legally obligated to pay by reason of liability imposed by law or assumed by the insured under an insured contract . . . ." Id. at 6–7. The ISOP Policy also states that ISOP will defend claims seeking damages covered by the terms of the policy when

> b) [d]amages are sought for bodily injury, property damage, personal injury or advertising injury covered by this Policy but not covered by any underlying insurance listed in the Schedule of underlying insurance or any other underlying insurance providing coverage to the insured. . . .

Id. at 7. Further, the policy states

> 2. When we assume the defense of any claim or suit:
>    a) We will defend any claim or suit against the insured seeking damages on account of bodily injury, property damage . . . even if such claim or suit is groundless, false of fraudulent, but we have the right to investigate, defend and settle the claim or suit as we deem expedient.

Id.

On September 3, 2007, "the Moonlight Fire" ignited in or near the Plumas National Forest in Greenville, California, burning approximately 65,000 acres in the area. Id. At the time of the Moonlight Fire, two Howell employees were allegedly operating bulldozers on private property in the area. Id. A number of lawsuits were subsequently filed against Sierra, Howell, and other landowners by a variety of plaintiffs for conduct arising out of the Moonlight Fire in this court and Plumas County Superior Court. Id. at 9–11. On or before August 2009 Sierra retained Downey Brand LLP ("Downey Brand") to defend it in these actions. Id. at 9. Sierra then tendered its defenses to plaintiff under the American Policy. Id. at 11. Although plaintiff agreed

to Sierra's proposed defenses it attempted to retain alternative counsel for Sierra. Id. Sierra refused to work with alternative counsel and instead continued retaining Downey Brand. Id. at 9–10. Sierra thereafter tendered its defenses to ISOP, which also accepted them without reservation. Id. at 11.

American paid more than $13 million for Sierra's defense in the Moonlight Fire lawsuits through August 17, 2012, including $5,380,365.75 in attorneys' fees and $7,853,924.94 in expert costs and other expenses. Id. Although plaintiff has requested that ISOP share in the payment of Sierra's defense costs, ISOP has refused. Id. On December 2011, ISOP entered into an agreement with Sierra, whereby ISOP agreed to pay, from approximately October 2011, Downey Brand attorneys' and paralegals' fees at "fifty percent (50%) of a blended rate basis of $300/hour for lawyers and $80/hr for paralegal, but in no event shall ISOP pay more than the difference between the actual blended rate and what [American] pays." Id.

On February 7, 2011, Sierra filed a complaint against plaintiff alleging that it was obligated to provide independent counsel in the Moonlight Fire lawsuits pursuant to California Civil Code § 2860 (hereinafter "Coverage Action"). Id. at 12. On August 1, 2011, plaintiff filed a counterclaim seeking a declaration that Sierra's refusal to relinquish control of its defense to plaintiff breached its duties under the American Policy and/or breached the implied covenant of good faith and fair dealing, thereby excusing plaintiff's duty to defend. Id. Plaintiff's counterclaim sought, among other things, reimbursement of some or all of its payments of Sierra's defense costs in the Moonlight Fire lawsuits. Id. While these claims were being litigated plaintiff paid Sierra's defense fees and costs in the Moonlight Fire lawsuits. Id.

On July 17, 2012, the parties in one of the actions against Sierra, United States of America v. Sierra Pacific Industries, et al., Case No. 2:09-CV-02445-JAM-EFB (E.D. Cal. Aug. 31, 2009), filed a settlement agreement (the "Federal Settlement Agreement"). Id. at 13. The Federal Settlement Agreement required that Sierra pay $17 million within sixty (60) days. Id. The Federal Settlement Agreement also required Sierra to pay an additional "$30 million in twice-yearly payments of $3 million each, on January 1 and July 1 every year starting January 1, 2013, until full payment is received," as well as transfer title of certain land to the United States. Id.

1    Plaintiff contributed $1 million to the settlement in accordance with the American Policy.
2    Id. at 13. ISOP paid the entire $10 million policy limit of the ISOP Policy to the United States in
3    partial satisfaction of Sierra's obligation under the Federal Settlement Agreement. Id. at 14.

## PROCEDURAL BACKGROUND

This action was filed by plaintiff on June 1, 2012, against ISOP. ECF No. 1. The operative complaint is plaintiff's TAC, filed on March 11, 2014, which includes claims for declaratory relief and equitable contribution. ECF No. 59 at 15, 18. ISOP filed an answer on March 24, 2014, arguing that it had no duty to defend Sierra in any of the Moonlight Fire lawsuits and that if it did, that obligation did not arise until Sierra paid $2 million in litigation fees or damages. ECF No. 60 at 8–9, 12. ISOP also argues that plaintiff is judicially estopped from arguing that it provided anything less than full coverage to Sierra because it took the contrary position in the Coverage Action. Id. at 10–11.

On October 6, 2014, plaintiff filed the motion for a protective order presently before the court. ECF No. 64. Plaintiff's motion explains that while the parties have agreed that a protective order should be issued, they disagree over whether the protective order should (1) include an "attorneys' eyes only" designation to protect plaintiff's underwriting policies in this matter, and (2) limit ISOP's ability to inquire into the reasonableness of the defense fees and costs that plaintiff incurred providing a defense to Sierra. Id. at 2. Accordingly, plaintiff requests that the court issue a protective order that includes the foregoing provisions not stipulated to by ISOP. Id. at 7. On November 7, 2014, Frank Kaplan, an attorney for ISOP, filed a declaration attaching a number of exhibits including: (1) a copy of the logging agreement between Sierra and Howell; (2) the protective order issued in the Coverage Action; (3) a copy of select pages from plaintiff's insurance policy issued to Howell; and (4) a copy of plaintiff's amended initial disclosures. ECF No. 66 at 1. On the same day the assistant vice president of AIG Claims, Inc. (the claims administrator for ISOP), James Drake, filed a declaration stating that ISOP has paid approximately $3,444,260.84 in legal fees for Sierra's defense and including as an exhibit the agreement between Sierra and ISOP wherein ISOP agreed to indemnify Sierra for its litigation costs in the Moonlight Fire lawsuits and participate in its defense. ECF No. 67 at 1.

4

On November 7, 2014, the parties filed their joint statement, detailing their attempts to meet and confer and the discovery requests at issue in plaintiff's motion for a protective order. ECF No. 68.  On November 10, 2014, Magistrate Judge Delaney recused herself from this matter, resulting in it being reassigned to the undersigned.  ECF No. 69.  On November 11, 2014, plaintiff filed a notice rescheduling the hearing on its motion for January 7, 2014.  ECF No. 70.

## LEGAL STANDARDS

The scope of discovery under Federal Rule of Civil Procedure 26(b) is broad: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).  "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.  As the Supreme Court reiterated in Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340 (1978), relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." 437 U.S. at 351 (citing Hickman v. Taylor, 329 U.S. 495, 501 (1947)).

However, under Rule 26(c)(1), the court may, for good cause, issue an order to protect a party from "annoyance, embarrassment, oppression, or undue expense or burden, including . . . that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way" Fed. R. Civ. P. 26(c).  Under Rule 26(c), "the party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted." Foltz v. State Farm Mut. Aut. Ins. Co., 331 F.3d 1122, 1130 (9th Cir. 2003).  "Where a business is the party seeking protection, it will have to show that disclosure would cause significant harm to its competitive and financial position.  That showing requires specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations of harm." Contratto v. Ethicon, Inc., 227 F.R.D. 304, 307 (N.D. Cal. 2005) (citation omitted); see also Beckman Indus., Inc. v. Int'l Ins. Co., 966 F.2d 470, 476 (9th Cir. 1992) (citation omitted).  The court is vested with broad discretion to permit or deny discovery. Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002).

# DISCUSSION

## I. Background of Dispute

On June 12, 2014, plaintiff provided ISOP a draft stipulated protective order for consideration in this case. ECF No. 68 at 7. On July 30, 2014, plaintiff sent a letter to ISOP inquiring into the status of the draft stipulated protective order. Id. On August 2, 2014, plaintiff served interrogatories and demands for production of documents upon ISOP. Id. On August 11, 2014, ISOP emailed plaintiff a redline draft stipulated protective order, with proposed changes. Id. at 8. On the same day ISOP served requests for admission, interrogatories and demands for production of documents upon plaintiff. Id. On August 15, 2014, the parties conferred by telephone concerning some of ISOP's proposed changes to the draft stipulated protective order, primarily (a) the definition of employee and employees, including who at ISOP may have access to disclosed information; (b) an "attorneys' eyes only" designation for confidential business information; and (c) the parties' obligation upon termination of litigation. Id. On August 20, 2014, plaintiff emailed ISOP as a follow-up to the meet and confer session. Id. On September 19, 2014, the parties further met and conferred regarding (a) the production of Sierra's invoices and billing records subject to the protective order; (b) whether ISOP's discovery requests include underwriting materials and claims manuals and the relevancy of such materials, if requested; (c) the attorneys' eyes only designation; (d) the relevancy of the reasonableness of defense costs; and (e) ISOP's document destruction or removal policy. Id.

On September 23, 2014, ISOP served responses to plaintiff's interrogatories and requests for documents. Id. at 9. On September 30, 2014, plaintiff provided ISOP with a further revised proposed protective order incorporating ISOP's changes and the parties' oral agreements. Id. On October 6, 2014, plaintiff served responses to ISOP's requests for admission, interrogatories, and requests for production. Id. On October 26, 2014, ISOP provided additional changes and comments to the proposed protective order. Id. On October 28, 2014, plaintiff provided additional revisions to the proposed protective order. Id. On November 7, 2014, the parties reached an agreement on most of the provisions in the protective order; and those that remain in dispute were confirmed between them. Id.

A. <u>Trade Secret Provision</u>

The following is the first portion of the protective order that plaintiff supports and ISOP opposes (hereinafter "Trade Secret Provision"):

> 9. With respect to competitively sensitive business information that pertains to either Party's pricing models and calculations, account strategy, and other confidential and proprietary materials that reflect how either party priced and underwrote the SPI and/or Howell account, such materials may be marked by the producing Party as "CONFIDENTIAL -- ATTORNEYS' EYES ONLY PURSUANT TO PROTECTIVE ORDER," and must only be viewed by the following:
>    a. counsel for the receiving Party; and
>    b. outside experts retained to assist counsel in this matter, as long as those experts
>        (1) are not currently employed by American's competitors or
>        (2) consulting with American's competitors about underwriting commercial insurance, and
>        (3) agree to be bound by the terms of the Protective Order and execute Exhibit A hereto
> 17. [only the following portion of this paragraph]… "ATTORNEYS' EYES ONLY"…
> 20. ASIC and ISOP are industry competitors who compete for the same insurance clients. ASIC's underwriting file for the Howell account contains ASIC's pricing models and calculations, account strategy, and other confidential and proprietary materials that pertain to how ASIC priced and underwrote the account. The disclosure of these materials and information without a protective order would place ASIC at a competitive disadvantage. As a result, ASIC may designate such materials and information would be as "ATTORNEYS' EYES ONLY" pursuant to the provisions set forth in Paragraph 9, above. The Court finds that the "ATTORNEY'S EYES ONLY" protection does not adversely affect ISOP's ability to defend against this action. This paragraph applies to the following discovery requests pending at the time of this order: ISOP's Corrected First Set of Requests for Production 2, 4, 18-20 and 33.

<u>Id.</u> at 13–14.

According to the parties' Joint Statement the Trade Secret Provision relates to the following discovery requests:

**REQUEST FOR PRODUCTION NO. 2:**

YOUR underwriting file for the ASIC PRIMARY POLICY.

**REQUEST FOR PRODUCTION NO. 3:**

YOUR underwriting file for the ASIC UMBRELLA POLICY.

7

**REQUEST FOR PRODUCTION NO. 15:**

All written discovery and discovery responses served in the SIERRA COVERAGE ACTION.

**REQUEST FOR PRODUCTION NO. 19:**

All transcripts of depositions taken in the SIERRA COVERAGE ACTION.

**REQUEST FOR PRODUCTION NO. 20:**

All documents produced in discovery by any party or non-party in the SIERRA COVERAGE ACTION.

**REQUEST FOR PRODUCTION NO. 33:**

All DOCUMENTS that discuss, describe or refer to the LIABILITY PLUS ENDORSEMENT, including its meaning, interpretation, intent, or scope.

Id. at 16–20.

    B.    <u>Defense Fees Provision</u>

The provision of the protective order that the parties dispute relating to the reasonableness of defense fees and costs includes the following (hereinafter "Defense Fees Provision"):

> 21. ISOP shall not conduct discovery into the reasonableness of the attorneys' fees, expert fees and other litigation costs that ASIC paid for Sierra's defense in the Moonlight Fire Lawsuits. The Court finds that ISOP has waived its right to challenge the reasonableness of the defense fees and costs by refusing to provide Sierra with a defense in the Moonlight Fire Lawsuits. This paragraph applies to the following discovery requests pending at the time of this order: ISOP's Corrected First Set of Requests for Production 28-32.

Id. at 14–15.

According to the parties' Joint Statement the Defense Fees Provision relates to the following discovery requests:

**REQUEST FOR PRODUCTION NO. 28:**

All DOCUMENTS that evidence, reflect, discuss, describe or refer to COMMUNICATIONS either internally or between YOU and any other person or entity regarding any MOONLIGHT FIRE INVOICES.

8

**REQUEST FOR PRODUCTION NO. 29:**

All DOCUMENTS that evidence, reflect, discuss, describe or refer to COMMUNICATIONS either internally or between YOU and any other person or entity regarding payment by YOU or the decision to pay by YOU all or any portion of any MOONLIGHT FIRE INVOICES.

**REQUEST FOR PRODUCTION NO. 30:**

All DOCUMENTS that evidence, reflect, discuss, describe or refer to COMMUNICATIONS either internally or between YOU and any other person or entity regarding YOUR refusal to pay or decision not to pay all or any portion of any MOONLIGHT FIRE INVOICES.

**REQUEST FOR PRODUCTION NO. 31:**

All DOCUMENTS that evidence, reflect, discuss, describe or refer to any evaluation, review, analysis or study by or on behalf of YOU regarding any MOONLIGHT FIRE DEFENSE COSTS or MOONLIGHT FIRE INVOICES.

**REQUEST FOR PRODUCTION NO. 32:**

All DOCUMENTS that evidence, reflect, discuss, describe or refer to the reasonableness or necessity of any MOONLIGHT FIRE DEFENSE COSTS.

Id. at 31–36.

    C.    Related Coverage Provision

Finally, the parties dispute the bolded portion of the following provision, the only one that ISOP supports and plaintiff opposes:

> 12. All Confidential Information must be held in confidence by those inspecting or receiving it, and must be used only for purposes of litigating this **or any related coverage** action or adjusting the underlying claims. Counsel for each Party, and each person receiving Confidential Information, must take reasonable precautions to prevent the unauthorized or inadvertent disclosure of such information.

Id. at 15. According to the parties' Joint Statement there is no discovery request in particular that corresponds to this provision. Id. at 49.

II.    Analysis

    A.    Trade Secret Provisions

The court finds that plaintiff has not shown good cause why the Trade Secret Provisions

9

1 should be included in its protective order because it has not explained how the disclosure of its
2 underwriting policies would harm it.  Plaintiff argues in general terms that the Trade Secret
3 Provisions should be included in the protective order because its underwriting policies are a trade
4 secret that, if revealed to ISOP, would put plaintiff at a severe competitive disadvantage.  ECF
5 No. 68 at 21–22; ECF No. 68-1.  ISOP, on the other hand, argues that (1) plaintiff's information
6 is adequately protected without the Trade Secret Provisions; (2) the information ISOP seeks is
7 highly relevant; and (3) the Trade Secret Provisions would prejudice ISOP by severely limiting
8 the expert consultants available to it.  ECF No. 68 at 26–30.

At the court's January 7, 2014, hearing plaintiff's counsel explained that the underwriting policies at issue include information on what risks plaintiff is willing to insure.  Plaintiff's counsel argued that plaintiff's underwriting policies are unique to it and that allowing those policies to be seen by plaintiff's competitors would put it at a competitive disadvantage. However, in the parties' joint statement, plaintiff alleges few facts explaining how the revelation of its underwriting policies would put it at a competitive disadvantage.[1]  In a declaration attached to the parties' joint statement Jerry Strawn, a commercial lines underwriting manager for Liberty Mutual Group, states that plaintiff's underwriting policies are competitively sensitive and not revealed to its competitors.  ECF No. 68-1 at 2.  Although Mr. Strawn states that plaintiff's underwriting policies are proprietary and specific to its insureds, it neglects to specifically allege how the revelation of these policies could harm plaintiff.  Id.

Accordingly, the court will deny plaintiff's motion to include the Trade Secret Provisions in the parties' protective order, without prejudice.

B.    Defense Fees Provision

The court finds that plaintiff has not shown good cause why the Defense Fees Provision should be included in its protective order because it has not established that ISOP's discovery

---

[1] In fact, in plaintiff's portion of the parties' joint statement plaintiff alleges, erroneously, that whether its underwriting policies are trade secrets is not in dispute at all.  Compare id. at 23 ("ISOP agrees that the parties' underwriting files contain competitively sensitive business information . . . .") with id. at 29 n.5 ("Contrary to American's counsel's declaration (paragraph 4), ICSOP's counsel did not agree that American's underwriting file contains competitively sensitive business information.").

10

1   requests are either irrelevant or unduly burdensome.

2         Plaintiff argues that the court should prohibit discovery into the reasonableness of the
3   defense costs paid by plaintiff in the Moonlight Fire lawsuits because such discovery is irrelevant.
4   According to plaintiff, discovery into the reasonableness of the defense fees it paid is irrelevant
5   because under well-established California law, "an insurer that breaches its duty to defend its
6   insured waives the right to challenge the reasonableness of the defense costs paid by the co-
7   insurer." ECF No. 68 at 37. ISOP, on the other hand, argues that the Defense Fees Provision
8   should not be included in the court's protective order because doing so would prematurely
9   dispose of a key issue in the case, whether ISOP had a duty to defend Sierra in the Moonlight Fire
10  lawsuits in the first place. Id. at 44. One of ISOP's primary defenses in this litigation is indeed
11  that it had no duty to defend Sierra in the Moonlight Fire lawsuits, and that therefore it is not
12  obligated to reimburse plaintiff for the costs incurred therein. ECF No. 60 at 8–9. Further, by
13  plaintiff's own admission ISOP will only be estopped from disputing the reasonableness of the
14  defense costs paid by plaintiff if ISOP breached a duty to defend Sierra. ECF No. 68 at 37; see
15  also Safeco Ins. Co. of America v. Superior Court, 140 Cal. App. 4th 874, 880 (2006).
16  Accordingly, the court does not find that discovery of information related to the reasonableness of
17  the defense fees paid by ISOP is irrelevant. Such a finding would prematurely dispose of one
18  ISOP's primary defenses.

19        Plaintiff also argues that ISOP's discovery requests relating to the reasonableness of the
20  defense fees incurred in the Moonlight Fire lawsuits are overbroad and burdensome. ECF No. 68
21  at 40. ISOP's discovery requests all relate to the costs incurred defending Sierra in the Moonlight
22  Fire lawsuits. See id. at 31–36. Assuming that ISOP is not precluded from arguing the
23  reasonableness of the expenses, these documents are necessarily relevant to ISOP's defense.
24  Further, plaintiff has not articulated why the discovery that ISOP has actually requested is
25  overbroad or unduly burdensome. Instead plaintiff points to discovery requests that have yet to
26  be made, including the deposing of out of state witnesses or the involvement of the entire defense
27  team and over 70 different expert witnesses. Id. at 68.

28        Accordingly, the court will deny plaintiff's motion to include the Defense Fees Provision

11

1  in its protective order because (1) doing so would dispose of one of the main disputed legal issues
2  in the case, and (2) discovery of the related requests for production nos. 28–32 is not unduly
3  burdensome.

4        C.      <u>Related Coverage Provision</u>

5       The court also finds that ISOP has not established good cause why the Related Coverage
6  Provision should be included in its protective order.  ISOP argues that the Related Coverage
7  Provision is necessary because without it ISOP might be precluded from using discovery obtained
8  in this case in other related actions.  ECF No. 68 at 51.  Plaintiff, on the other hand, argues that
9  the "or any related coverage" provision is vague, overbroad, and ambiguous.  <u>Id.</u> at 50.  Plaintiff
10 also points out that the only other pending related case in existence already has a protective order
11 in place, <u>Sierra Pacific Industries v. American States Insurance Company</u>, 2:11-cv-00346-MCE-
12 JFM (E.D. Cal. 2011).  <u>Id.</u>  Without another existing related case plaintiff argues that the Related
13 Coverage Provision is premature.  <u>Id.</u> at 50–51.  The court finds that the Related Coverage
14 Provision is vague and overbroad in a way that is unfairly prejudicial to plaintiff.  For example,
15 based on the language of the Related Coverage Provision plaintiff's confidential information
16 could be used in lawsuits involving insurers other than ISOP and American.  <u>Id.</u>  Such a use of
17 plaintiff's confidential information would not be appropriate.  In light of the potentially far-
18 reaching implications of the Related Coverage Provision the court will deny ISOP's motion to
19 include it in the protective order.

20                                   CONCLUSION

21      In accordance with the foregoing, THE COURT HEREBY ORDERS that plaintiff's
22 motion for a protective order, ECF No. 64, is denied without prejudice.
23 DATED: January 14, 2015

24                                   /s/ Allison Claire
25                                 ALLISON CLAIRE
                                UNITED STATES MAGISTRATE JUDGE
26
27
28