UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN STATES INSURANCE COMPANY,<br><br>        Plaintiff,<br><br>    v.<br><br>INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA,<br><br>        Defendant. | No. 2:12-cv-01489-MCE-AC<br><br>**MEMORANDUM AND ORDER** |

This action proceeds on the first and fourth claim for relief in Plaintiff American States Insurance Company's ("Plaintiff") Corrected Third Amended Complaint. In the first claim for relief, Plaintiff requests that the Court declare that Defendant Insurance Company of the State of Pennsylvania ("Defendant") had an independent duty to defend its insured, Sierra Pacific Industries ("Sierra"), in various lawsuits arising from the "Moonlight Fire." ECF No. 59. In the fourth claim for relief, Plaintiff seeks "equitable contribution or other equitable relief against [Defendant] for reimbursement of those sums [Plaintiff] paid in Sierra's defense in the Moonlight Fire Lawsuits in excess of its equitable share, plus prejudgment interest." Id. at 18.

Pending before the Court are the parties' cross motions for summary judgment. ECF Nos. 85, 89. Plaintiff seeks summary judgment on the first claim for relief and

Defendant seeks summary judgment on both claims for relief.  For the reasons that follow, Plaintiff's Motion for Summary Judgment (ECF No. 85) is GRANTED and Defendant's Motion for Summary Judgment (ECF No. 99) is DENIED.[1]

## BACKGROUND[2]

In February 2007, Sierra obtained rights to a timber harvesting operation on a parcel of land in Plumas County, California.  Sierra then hired Howell's Forest Harvesting ("Howell") to perform certain timber harvest operations on this land under the terms of a logging agreement.  The logging agreement required Howell to obtain Commercial General Liability ("CGL") insurance and to name Sierra as an additional insured under its CGL policy.

In July 2007, Plaintiff issued CGL insurance to Howell.  Sierra was included as an additional insured under a "Liability Plus Endorsement" page stating that an insured under the CGL policy includes "[a]ny person or organization . . . for whom you are required by written contract, agreement[,] or permit to provide insurance."  However, this insurance coverage for Sierra as an additional insured was limited "only to the extent [Sierra] [is] held liable due to: . . . [Howell's] ongoing operations for [Sierra]."  Thus, while there is no dispute that Plaintiff's coverage for Sierra was primary in nature, it was limited to Sierra's vicarious liability as to Howell, and Sierra's independent liability was not covered under Plaintiff's CGL Policy with Howell.[3]

///

---

[1] Because oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Cal. Local R. 230(g).

[2] The following statement of facts is taken from the Court's January 24, 2014 Order.  ECF No. 54.  Although the statement of facts in that Order was based on the allegations in the Plaintiff's Third Amended Complaint, the Court finds it provides sufficient background for the pending cross motions for summary judgment and is consistent with the parties' statements of undisputed facts.

[3] This Court will address Defendant's interpretation of the "only to the extent" language in Plaintiff's CGL policy later in this Order.

2

In October 2006, Defendant issued Sierra a commercial umbrella insurance policy that provided both primary and excess coverage. Defendant's policy for Sierra delineates its duty to defend as follows:

> [Defendant] shall have the right and duty to defend any claim or suit . . . when . . .
>
> (a) The applicable limits of insurance of . . . any . . . underlying insurance . . . [have] been exhausted by payment of claims or suits to which this Policy applies; or
>
> (b) Damages are sought for . . . property damage . . . covered by this Policy but not covered by . . . any other underlying insurance providing coverage to [Sierra].

Thus, under clause (a), Defendant's policy provides excess insurance when Sierra is vicariously liable with Howell and Plaintiff's policy limits are exhausted by payment of claims. Additionally, Defendant's policy provides umbrella, or primary, insurance under clause (b) when property damage arises from Sierra's non-vicarious liability with Howell pursuant to Plaintiff's CGL policy.

In September 2007, "Howell employees were allegedly operating bulldozers . . . pursuant to the [l]ogging [a]greement [with Sierra]," when a fire ignited nearby that "eventually burn[ed] approximately 65,000 acres in the area." Sparks caused by Howell's bulldozers allegedly caused the conflagration, which became known as the Moonlight Fire. Multiple lawsuits were filed against both Sierra and Howell as a result of the fire, all of which Sierra tendered to both Plaintiff and Defendant. Plaintiff accepted Sierra's defense in all of the fire-related lawsuits "without a reservation of rights to deny coverage for any damages awarded against Sierra, subject to available policy limits and California law. . . ." Thus, Plaintiff agreed to defend and indemnify Sierra for not only suits where Sierra was vicariously liable with Howell—which was covered under Plaintiff's CGL policy—but also where Sierra was independently liable.

Because Plaintiff's CGL policy only covered Sierra for vicarious liability with Howell, however, Sierra took the position that Plaintiff had a conflict of interest in defending Sierra. As a result of this conflict, Sierra argued it was entitled to independent

counsel. Sierra maintained this stance throughout the lifetime of the fire-related lawsuits—despite the fact that Plaintiff accepted defense of the lawsuits without reservation—and Sierra obtained outside counsel for its defense. At no time did Defendant defend or attempt to defend Sierra in any of the fire-related lawsuits.

In July 2012, the fire-related suits against Sierra settled, exhausting both Plaintiff's and Defendant's respective policy limits. Defendant disputed its defense costs with Sierra, but Defendant and Sierra have settled this dispute. Plaintiff and Sierra also disputed defense costs with one another, but Plaintiff settled that dispute as well and "released all claims against [Sierra] . . . while expressly preserving all [Plaintiff's] rights against [Defendant] with respect to its payments of Sierra's defense costs. . . ."

The pending motions for summary judgment present a single issue: whether Defendant had a duty to defend Sierra in each of the Moonlight Fire actions such that Plaintiff was entitled to reimbursement for a portion of the costs it paid to defend Sierra.

## STANDARD

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits[,] or declarations . . . or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987).  The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

## ANALYSIS

### A.  Defendant's Duty to Defend Sierra

Defendant had a primary duty to defend Sierra in the Moonlight Fire lawsuits. Under Plaintiff's CGL policy with Howell, Plaintiff was required to defend Sierra for lawsuits "only to the extent [Sierra] [was] held liable due to:  . . . [Howell's] ongoing operations for [Sierra]."  Thus, Plaintiff was only required to defend Sierra for lawsuits in

5

which Sierra was vicariously liable with Howell.  See Acceptance Ins. Co. v. Syufy Enters., 69 Cal. App. 4th 321, 330 (1999) ("Insurance companies are free to, and commonly have, issued additional insured endorsements that specifically limit coverage to situations in which the additional insured is faced with vicarious liability for negligent conduct by the named insured.").

Conversely, Defendant's umbrella policy stated that:

> [Defendant] shall have the right and duty to defend any claim or suit . . . when . . . [d]amages are sought for . . . property damage . . . covered by this Policy but not covered by . . . any other underlying insurance providing coverage to [Sierra].

Defendant's umbrella policy therefore covered Sierra for any claim or suit seeking damages for property damage which was not covered by Plaintiff's policy or any other underlying insurance policy.  Defendant's policy therefore drops down and becomes primary coverage for suits in which Sierra is independently liable for property damage.

In the Moonlight Fire lawsuits filed against Sierra, the plaintiffs alleged that Sierra could have been independently liable for the fire because of Sierra's responsibility to suspend operations in certain weather conditions.  See ECF Nos. 87-1, 87-2, 87-3.[4]  Thus, Defendant's duty to drop down and defend as a primary insurer under the umbrella policy could have been triggered by claims in the fire-related lawsuits.

Umbrella coverage, like that Defendant promised to provide in clause (b) of its defense agreement, may provide primary insurance coverage for damages not covered by any underlying insurance.  See, e.g., Powerine Oil Co., Inc. v. Superior Court, 37 Cal. 4th 377, 398 (2005) ("[T]he policies here . . . are not merely intended to operate as excess insurance . . . [T]hese policies provide umbrella coverage, i.e., 'alternative primary coverage as to losses 'not covered by' the primary policy.'").  As the California Court of Appeal explained:

///

///

---

[4] Plaintiff's Requests for Judicial Notice (ECF No. 87) are GRANTED.

> Primary insurance provides coverage immediately upon the occurrence of a loss or an event giving rise to liability, while excess insurance provides coverage only upon the exhaustion of specified primary insurance. Insurance policies sometimes include both excess and umbrella insurance. Umbrella insurance provides coverage for claims that are not covered by the underlying primary insurance. An umbrella insurer "drops down" to provide primary coverage in those circumstances. Thus, a policy that provides both excess and umbrella insurance provides both excess and primary coverage.

Legacy Vulcan Corp. v. Superior Court, 185 Cal. App. 4th 677, 692 (2010) (internal citations omitted).

Here, as in Legacy Vulcan, Defendant's policy contains both excess and umbrella coverage; to the extent its umbrella coverage is invoked, that coverage is primary. Legacy Vulcan— and particularly its explanation that an umbrella carrier has a primary duty to defend under umbrella coverage "for claims not within the terms of the coverage of underlying insurance"—is instructive for purposes of the present case and mandates against any finding that Defendant's policy provided no defense obligations.[5]

Accordingly, Plaintiff's Motion for Summary Judgment is GRANTED, as Defendant had a primary and independent duty to defend Sierra in the Moonlight Fire lawsuits.

**B. Defendant's Arguments**

Defendant advances several arguments in its Motion for Summary Judgment and its Opposition to Plaintiff's Motion for Summary Judgment. The Court will address each in turn.

///

---

[5] It should also be noted, as set forth above, that the duty to defend provisions contained in Defendant's policy obligate Defendant to defend either under the "excess" or the "umbrella" clauses. In MGA Entertainment, Inc. v. Hartford Ins. Group, 869 F. Supp. 2d 1117 (C.D. Cal. 2012), the Central District found that where the defense clause is disjunctive rather than conjunctive (triggering a duty to defend under either excess or umbrella coverage) a primary duty to defend is imposed on the umbrella carrier. Id. at 1134. While Defendant relies on the decision in Padilla Construction Co., v. Transportation Ins. Co., 150 Cal. App. 4th 984 (2007) in contending otherwise, the duty to defend language at issue in Padilla called for a defense when there was no underlying coverage under both the excess and the umbrella coverage. The present case is distinguishable because Defendant's policy uses the disjunctive "or," and therefore provides a broader duty to defend.

Defendant first argues that a condition to its coverage—specifically, that there be no "other underlying insurance"—was not met because both Plaintiff and Defendant "provided coverage for the damages alleged in the Moonlight Fire Lawsuits." Def.'s Mot. Summ. J., ECF No. 99, at 9. Defendant contends that "[b]ecause the Moonlight Fire Lawsuits sought damages for property damage that were covered by [Plaintiff's] policy," Defendant's duty to defend under the umbrella coverage was never triggered. Id.

Defendant is incorrect in asserting that "both policies covered the same damages sought" in the Moonlight Fire actions. Id. at 10. As explained above, Plaintiff was only required to defend Sierra in lawsuits in which Sierra was vicariously liable for Howell, and Defendant's policy dropped down and became primary coverage for suits in which Sierra was independently liable for property damage. Contrary to Defendant's argument, there was no "other underlying insurance" with respect to Sierra's independent liability; consequently, that condition to Defendant's duty to defend was met, and Defendant had a duty to defend Sierra in the Moonlight Fire actions.

Defendant next argues that Plaintiff's policy "broadly provided that [Plaintiff] would defend Sierra against any 'suit' seeking damages because of property damage." Id. at 13. Defendant, however, acknowledges that the "Liability Plus Endorsement" to Plaintiff's policy limits Plaintiff's obligations to Sierra:

> The Endorsement does say that Sierra is an insured 'only to the extent' Howell is held liable due to Howell's ongoing operations for Sierra. But that only means that there is no coverage if Sierra, but not Howell, is found liable. It does not mean that coverage is precluded where Howell is liable for its negligence, and Sierra's own conduct related to Howell's operations also makes Sierra liable.

Id. at 14.

Defendant's reading of Plaintiff's policy is not persuasive. Contrary to Defendant's suggestion, the "only to the extent [Howell] is held liable" language in Plaintiff's policy limits coverage solely to Sierra's liability for Howell's conduct. In Maryland Casualty Co. v. Nationwide Mutual Insurance Co., the California Court of Appeal addressed an insurance policy that provided: "this insurance with respect to

1  [Nielsen] applies only to the extent that [Nielsen] is held liable for <u>your</u> acts or omissions
2  arising out of and in the course of operations performed for [Nielsen] . . . ." 81 Cal. App.
3  4th 1082, 1087, 1090-91 (2000).  The Court of Appeal determined that "basic additional
4  insured provision created the limited vicarious liability coverage for the additional
5  insured".  <u>Id.</u>  Here, it is not just the "to the extent" language in Plaintiff's policy that limits
6  Plaintiff's coverage of Sierra.  Plaintiff's policy also provides:  "Coverage shall be limited
7  to the extent of [Howell's] negligence or fault according to the applicable principles of
8  comparative fault."  That language, read in conjunction with the "to the extent" provision,
9  further indicates that Plaintiff's policy limits coverage solely to Sierra's liability for
10 Howell's conduct.

11       Defendant further argues that the claims against Sierra in the Moonlight Fire
12 actions were "vicarious liability" claims and therefore within the scope of Plaintiff's policy
13 because breach of non-delegable duties is a form of vicarious liability.  Def.'s Mot.
14 Summ. J., ECF No. 99, at 16.  This argument is also not persuasive.  As Plaintiff notes in
15 its Opposition to Defendant's Motion for Summary Judgment, the California Supreme
16 Court has made clear that the negligent hiring and supervision claims asserted against
17 Sierra in the Moonlight Fire actions are forms of independent, non-vicarious liability.  <u>See</u>
18 Pl.'s Req. for Judicial Notice, ECF No. 87-4, Ex. M at 75 (a filing from one of the
19 Moonlight Fire actions in which the plaintiff United States of America argued that "Sierra
20 Pacific is also liable for its own negligent supervision and retention of Howell's"); <u>Minkler</u>
21 <u>v. Safeco Ins. Co. of Am.</u>, 49 Cal. 4th 315, 325 (2010) (explaining a claim that "clearly
22 depends upon allegations that [a defendant] herself committed an <u>independent tort</u>" was
23 not "merely <u>vicarious</u> or <u>derivative</u>").

24       Defendant's next argument is based on the logging agreement between Sierra
25 and Howell.  Defendant emphasizes that this agreement required Howell to obtain
26 insurance which was primary and non-contributory with any insurance held by Sierra.
27 Defendant's argument fails for three reasons.  First, Plaintiff's policy with Howell does
28 not contain any provision indicating that its additional insured coverage for Sierra is

9

primary to and non-contributory with Sierra's own coverage.  Second, Plaintiff was not a party to the logging agreement between Sierra and Howell, and Plaintiff's policy with Howell should not be rewritten to comply with the logging agreement.  See E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind a nonparty.").  Third, as Plaintiff notes:  Sierra accepted Howell's non-compliant insurance by failing to exercise its power to terminate the logging agreement or purchase complaint insurance and charging Howell.

Finally, Defendant emphasizes the "other insurance" provision in its policy, which provides:

> If other valid and collectible insurance applies to a claim or suit that is also covered by this Policy, this Policy will apply excess of the other insurance.  However, this provision will not apply if the other insurance is specifically written to be excess of this Policy.

Defendant claims that Plaintiff's policy is "valid and collectible" and applied to the Moonlight Fire actions.  Def.'s Mot. Summ. J., ECF No. 99, at 19.  The Court rejects this argument because the "other insurance" provision in Defendant's policy did not apply to the Moonlight Fire actions.  Again:  Plaintiff was only required to defend Sierra in lawsuits in which Sierra was vicariously liable for Howell, and Defendant's policy dropped down and became primary coverage for suits in which Sierra was independently liable for property damage.  Thus, the "other insurance" provision in Defendant's policy did not eliminate Defendant's duty to defend Sierra in the Moonlight Fire actions.

Defendant's arguments do not undermine the Court's finding that Defendant had a primary and independent duty to defend Sierra in the Moonlight Fire lawsuits.  Defendant's Motion for Summary Judgment is accordingly DENIED.

///
///
///
///

**CONCLUSION**

10

1
2      Plaintiff's Motion for Summary Judgment (ECF No. 85) is GRANTED, and
3 Defendant's Motion for Summary Judgment (ECF No. 99) is DENIED. Plaintiff is entitled
4 to summary judgment on its first claim for relief, as Defendant had a primary and
5 independent duty to defend Sierra in the Moonlight Fire lawsuits.
6      IT IS SO ORDERED.
7 Dated: March 23, 2016
8
9
10             MORRISON C. ENGLAND, JR, CHIEF JUDGE
11             UNITED STATES DISTRICT COURT
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28