1

2

3

4

5

6

7                        UNITED STATES DISTRICT COURT

8                        EASTERN DISTRICT OF CALIFORNIA

9

10   AMERICAN STATES INSURANCE                No.  2:12-cv-01489-MCE-AC
     COMPANY,
11
                        Plaintiff,
12                                            **AMENDED MEMORANDUM AND
         v.                                   ORDER**[1]
13
     INSURANCE COMPANY OF THE
14   STATE OF PENNSYLVANIA,

15                      Defendant.

16

17        This action proceeds on the first and fourth claim for relief in Plaintiff American

18   States Insurance Company's ("Plaintiff") Corrected Third Amended Complaint.  In the

19   first claim for relief, Plaintiff requests that the Court declare that Defendant Insurance

20   Company of the State of Pennsylvania ("Defendant") had an independent duty to defend

21   its insured, Sierra Pacific Industries ("Sierra"), in various lawsuits arising from the

22   "Moonlight Fire."  ECF No. 59.  In the fourth claim for relief, Plaintiff seeks "equitable

23   contribution or other equitable relief against [Defendant] for reimbursement of those

24   sums [Plaintiff] paid in Sierra's defense in the Moonlight Fire Lawsuits in excess of its

25   equitable share, plus prejudgment interest."  Id. at 18.

26   _____
     [1] This Amended Memorandum and Order is identical to its predecessor, filed on March 23, 2016
27   (ECF No. 156), except that it corrects two inadvertent typographical errors:  1: on page 2, lines 19-20
     (substituting "Howell" in place of Sierra such that the quoted language reads "only to the extent [Howell[
28   [is] held liable"); and 2) page 5, line 28 (substituting "Howell" in place of Sierra such that the quoted
     language reads "only to the extent [Howell] [was] held liable").  Otherwise the two Orders are identical.

                                              1

1  Pending before the Court are the parties' cross motions for summary judgment.

2  ECF Nos. 85, 89.  Plaintiff seeks summary judgment on the first claim for relief and

3  Defendant seeks summary judgment on both claims for relief.  For the reasons that

4  follow, Plaintiff's Motion for Summary Judgment (ECF No. 85) is GRANTED and

5  Defendant's Motion for Summary Judgment (ECF No. 99) is DENIED.[2]

6

7  **BACKGROUND**[3]

8

9  In February 2007, Sierra obtained rights to a timber harvesting operation on a

10  parcel of land in Plumas County, California.  Sierra then hired Howell's Forest Harvesting

11  ("Howell") to perform certain timber harvest operations on this land under the terms of a

12  logging agreement.  The logging agreement required Howell to obtain Commercial

13  General Liability ("CGL") insurance and to name Sierra as an additional insured under its

14  CGL policy.

15  In July 2007, Plaintiff issued CGL insurance to Howell.  Sierra was included as an

16  additional insured under a "Liability Plus Endorsement" page stating that an insured

17  under the CGL policy includes "[a]ny person or organization . . . for whom you are

18  required by written contract, agreement[,] or permit to provide insurance."  However, this

19  insurance coverage for Sierra as an additional insured was limited "only to the extent

20  [Howell] [is] held liable due to: . . . [Howell's] ongoing operations for [Sierra]."  Thus,

21  while there is no dispute that Plaintiff's coverage for Sierra was primary in nature, it was

22  limited to Sierra's vicarious liability as to Howell, and Sierra's independent liability was

23  not covered under Plaintiff's CGL Policy with Howell.[4]

24  _____

25  [2]  Because oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Cal. Local R. 230(g).

26  [3]  The following statement of facts is taken from the Court's January 24, 2014 Order.  ECF No. 54. Although the statement of facts in that Order was based on the allegations in the Plaintiff's Third Amended

27  Complaint, the Court finds it provides sufficient background for the pending cross motions for summary judgment and is consistent with the parties' statements of undisputed facts.

28  [4]  This Court will address Defendant's interpretation of the "only to the extent" language in

1    In October 2006, Defendant issued Sierra a commercial umbrella insurance policy

2  that provided both primary and excess coverage.  Defendant's policy for Sierra

3  delineates its duty to defend as follows:

4           [Defendant] shall have the right and duty to defend any claim
            or suit . . . when . . .
5
            (a)  The applicable limits of insurance of . . .   any . . .
6           underlying insurance . . . [have] been exhausted by payment
            of claims or suits to which this Policy applies; or
7
            (b) Damages are sought for . . . property damage . . . covered
8           by this Policy but not covered by . . .  any other underlying
            insurance providing coverage to [Sierra].
9

10  Thus, under clause (a), Defendant's policy provides excess insurance when Sierra is

11  vicariously liable with Howell and Plaintiff's policy limits are exhausted by payment of

12  claims.  Additionally, Defendant's policy provides umbrella, or primary, insurance under

13  clause (b) when property damage arises from Sierra's non-vicarious liability with Howell

14  pursuant to Plaintiff's CGL policy.

15    In September 2007, "Howell employees were allegedly operating bulldozers . . .

16  pursuant to the [l]ogging [a]greement [with Sierra]," when a fire ignited nearby that

17  "eventually burn[ed] approximately 65,000 acres in the area."  Sparks caused by

18  Howell's bulldozers allegedly caused the conflagration, which became known as the

19  Moonlight Fire.  Multiple lawsuits were filed against both Sierra and Howell as a result of

20  the fire, all of which Sierra tendered to both Plaintiff and Defendant.  Plaintiff accepted

21  Sierra's defense in all of the fire-related lawsuits "without a reservation of rights to deny

22  coverage for any damages awarded against Sierra, subject to available policy limits and

23  California law. . . ."  Thus, Plaintiff agreed to defend and indemnify Sierra for not only

24  suits where Sierra was vicariously liable with Howell—which was covered under

25  Plaintiff's CGL policy—but also where Sierra was independently liable.

26    Because Plaintiff's CGL policy only covered Sierra for vicarious liability with

27  Howell, however, Sierra took the position that Plaintiff had a conflict of interest in

28  Plaintiff's CGL policy later in this Order.

3

1  defending Sierra.  As a result of this conflict, Sierra argued it was entitled to independent

2  counsel.  Sierra maintained this stance throughout the lifetime of the fire-related

3  lawsuits—despite the fact that Plaintiff accepted defense of the lawsuits without

4  reservation—and Sierra obtained outside counsel for its defense.  At no time did

5  Defendant defend or attempt to defend Sierra in any of the fire-related lawsuits.

6        In July 2012, the fire-related suits against Sierra settled, exhausting both Plaintiff's

7  and Defendant's respective policy limits.  Defendant disputed its defense costs with

8  Sierra, but Defendant and Sierra have settled this dispute.  Plaintiff and Sierra also

9  disputed defense costs with one another, but Plaintiff settled that dispute as well and

10  "released all claims against [Sierra] . . . while expressly preserving all [Plaintiff's] rights

11  against [Defendant] with respect to its payments of Sierra's defense costs. . . ."

12        The pending motions for summary judgment present a single issue:  whether

13  Defendant had a duty to defend Sierra in each of the Moonlight Fire actions such that

14  Plaintiff was entitled to reimbursement for a portion of the costs it paid to defend Sierra.

15

16                                **STANDARD**

17

18        The Federal Rules of Civil Procedure provide for summary judgment when "the

19  movant shows that there is no genuine dispute as to any material fact and the movant is

20  entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v.

21  Catrett, 477 U.S. 317, 322 (1986).

22        In a summary judgment motion, the moving party always bears the initial

23  responsibility of informing the court of the basis for the motion and identifying the

24  portions in the record "which it believes demonstrate the absence of a genuine issue of

25  material fact."  Celotex, 477 U.S. at 323.  If the moving party meets its initial

26  responsibility, the burden then shifts to the opposing party to establish that a genuine

27  issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith

28  Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S.

1  253, 288-89 (1968).

2         In attempting to establish the existence or non-existence of a genuine factual

3  dispute, the party must support its assertion by "citing to particular parts of materials in

4  the record, including depositions, documents, electronically stored information,

5  affidavits[,] or declarations . . . or other materials; or showing that the materials cited do

6  not establish the absence or presence of a genuine dispute, or that an adverse party

7  cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  The

8  opposing party must demonstrate that the fact in contention is material, i.e., a fact that

9  might affect the outcome of the suit under the governing law.  Anderson v. Liberty Lobby,

10  Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and

11  Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987).  The opposing party must also

12  demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is

13  such that a reasonable jury could return a verdict for the nonmoving party."  Anderson,

14  477 U.S. at 248.

15         In resolving a summary judgment motion, the evidence of the opposing party is to

16  be believed, and all reasonable inferences that may be drawn from the facts placed

17  before the court must be drawn in favor of the opposing party.  Anderson, 477 U.S. at

18  255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

19  obligation to produce a factual predicate from which the inference may be drawn.

20  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd,

21  810 F.2d 898 (9th Cir. 1987).

22

23                                      **ANALYSIS**

24

25         A.     **Defendant's Duty to Defend Sierra**

26         Defendant had a primary duty to defend Sierra in the Moonlight Fire lawsuits.

27  Under Plaintiff's CGL policy with Howell, Plaintiff was required to defend Sierra for

28  lawsuits "only to the extent [Howell] [was] held liable due to:  . . . [Howell's] ongoing

                                              5

1   operations for [Sierra]."  Thus, Plaintiff was only required to defend Sierra for lawsuits in

2   which Sierra was vicariously liable with Howell.  See Acceptance Ins. Co. v. Syufy

3   Enters., 69 Cal. App. 4th 321, 330 (1999) ("Insurance companies are free to, and

4   commonly have, issued additional insured endorsements that specifically limit coverage

5   to situations in which the additional insured is faced with vicarious liability for negligent

6   conduct by the named insured.").

7         Conversely, Defendant's umbrella policy stated that:

8              [Defendant] shall have the right and duty to defend any claim
9              or suit  . . . when . . . [d]amages are sought for . . . property
              damage . . . covered by this Policy but not covered by . . .
10             any other underlying insurance providing coverage to [Sierra].

11  Defendant's umbrella policy therefore covered Sierra for any claim or suit seeking

12  damages for property damage which was not covered by Plaintiff's policy or any other

13  underlying insurance policy.  Defendant's policy therefore drops down and becomes

14  primary coverage for suits in which Sierra is independently liable for property damage.

15        In the Moonlight Fire lawsuits filed against Sierra, the plaintiffs alleged that Sierra

16  could have been independently liable for the fire because of Sierra's responsibility to

17  suspend operations in certain weather conditions.  See ECF Nos. 87-1, 87-2, 87-3.[5]

18  Thus, Defendant's duty to drop down and defend as a primary insurer under the

19  umbrella policy could have been triggered by claims in the fire-related lawsuits.

20        Umbrella coverage, like that Defendant promised to provide in clause (b) of its

21  defense agreement, may provide primary insurance coverage for damages not covered

22  by any underlying insurance.  See, e.g., Powerine Oil Co., Inc. v. Superior Court, 37 Cal.

23  4th 377, 398 (2005) ("[T]he policies here . . . are not merely intended to operate as

24  excess insurance . . . [T]hese policies provide umbrella coverage, i.e., 'alternative

25  primary coverage as to losses 'not covered by' the primary policy.'").  As the California

26  Court of Appeal explained:

27  ///

28        [5] Plaintiff's Requests for Judicial Notice (ECF No. 87) are GRANTED.

6

1
2
3
4
5
6

> Primary insurance provides coverage immediately upon the occurrence of a loss or an event giving rise to liability, while excess insurance provides coverage only upon the exhaustion of specified primary insurance.  Insurance policies sometimes include both excess and umbrella insurance. Umbrella insurance provides coverage for claims that are not covered by the underlying primary insurance.  An umbrella insurer "drops down" to provide primary coverage in those circumstances.  Thus, a policy that provides both excess and umbrella insurance provides both excess and primary coverage.

7    Legacy Vulcan Corp. v. Superior Court, 185 Cal. App. 4th 677, 692 (2010) (internal

8    citations omitted).

9         Here, as in Legacy Vulcan, Defendant's policy contains both excess and umbrella

10   coverage; to the extent its umbrella coverage is invoked, that coverage is primary.

11   Legacy Vulcan— and particularly its explanation that an umbrella carrier has a primary

12   duty to defend under umbrella coverage "for claims not within the terms of the coverage

13   of underlying insurance"—is instructive for purposes of the present case and mandates

14   against any finding that Defendant's policy provided no defense obligations.[6]

15        Accordingly, Plaintiff's Motion for Summary Judgment is GRANTED, as

16   Defendant had a primary and independent duty to defend Sierra in the Moonlight Fire

17   lawsuits.

18        **B.  Defendant's Arguments**

19        Defendant advances several arguments in its Motion for Summary Judgment and

20   its Opposition to Plaintiff's Motion for Summary Judgment.  The Court will address each

21   in turn.

22   ///

23

24        [6]  It should also be noted, as set forth above, that the duty to defend provisions contained in Defendant's policy obligate Defendant to defend either under the "excess" or the "umbrella" clauses.  In
25   MGA Entertainment, Inc. v. Hartford Ins. Group, 869 F. Supp. 2d 1117 (C.D. Cal. 2012), the Central District found that where the defense clause is disjunctive rather than conjunctive (triggering a duty to
26   defend under either excess or umbrella coverage) a primary duty to defend is imposed on the umbrella carrier.  Id. at 1134.  While Defendant relies on the decision in Padilla Construction Co., v. Transportation
27   Ins. Co., 150 Cal. App. 4th 984 (2007) in contending otherwise, the duty to defend language at issue in Padilla called for a defense when there was no underlying coverage under both the excess and the
28   umbrella coverage.  The present case is distinguishable because Defendant's policy uses the disjunctive "or," and therefore provides a broader duty to defend.

7

1    Defendant first argues that a condition to its coverage—specifically, that there be

2    no "other underlying insurance"—was not met because both Plaintiff and Defendant

3    "provided coverage for the damages alleged in the Moonlight Fire Lawsuits."  Def.'s Mot.

4    Summ. J., ECF No. 99, at 9.  Defendant contends that "[b]ecause the Moonlight Fire

5    Lawsuits sought damages for property damage that were covered by [Plaintiff's] policy,"

6    Defendant's duty to defend under the umbrella coverage was never triggered.  Id.

7    Defendant is incorrect in asserting that "both policies covered the same damages

8    sought" in the Moonlight Fire actions.  Id. at 10.  As explained above, Plaintiff was only

9    required to defend Sierra in lawsuits in which Sierra was vicariously liable for Howell,

10   and Defendant's policy dropped down and became primary coverage for suits in which

11   Sierra was independently liable for property damage.  Contrary to Defendant's argument,

12   there was no "other underlying insurance" with respect to Sierra's independent liability;

13   consequently, that condition to Defendant's duty to defend was met, and Defendant had

14   a duty to defend Sierra in the Moonlight Fire actions.

15   Defendant next argues that Plaintiff's policy "broadly provided that [Plaintiff] would

16   defend Sierra against any 'suit' seeking damages because of property damage."  Id. at

17   13.  Defendant, however, acknowledges that the "Liability Plus Endorsement" to

18   Plaintiff's policy limits Plaintiff's obligations to Sierra:

19           The Endorsement does say that Sierra is an insured 'only to
             the extent' Howell is held liable due to Howell's ongoing
20           operations for Sierra.  But that only means that there is no
             coverage if Sierra, but not Howell, is found liable.  It does not
21           mean that coverage is precluded where Howell is liable for its
             negligence, and Sierra's own conduct related to Howell's
22           operations also makes Sierra liable.

23   Id. at 14.

24   Defendant's reading of Plaintiff's policy is not persuasive.  Contrary to

25   Defendant's suggestion, the "only to the extent [Howell] is held liable" language in

26   Plaintiff's policy limits coverage solely to Sierra's liability for Howell's conduct.  In

27   Maryland Casualty Co. v. Nationwide Mutual Insurance Co., the California Court of

28   Appeal addressed an insurance policy that provided:  "this insurance with respect to

8

1   [Nielsen] applies only to the extent that [Nielsen] is held liable for your acts or omissions

2   arising out of and in the course of operations performed for [Nielsen] . . . ." 81 Cal. App.

3   4th 1082, 1087, 1090-91 (2000).  The Court of Appeal determined that "basic additional

4   insured provision created the limited vicarious liability coverage for the additional

5   insured".  Id.  Here, it is not just the "to the extent" language in Plaintiff's policy that limits

6   Plaintiff's coverage of Sierra.  Plaintiff's policy also provides:  "Coverage shall be limited

7   to the extent of [Howell's] negligence or fault according to the applicable principles of

8   comparative fault."  That language, read in conjunction with the "to the extent" provision,

9   further indicates that Plaintiff's policy limits coverage solely to Sierra's liability for

10  Howell's conduct.

11          Defendant further argues that the claims against Sierra in the Moonlight Fire

12  actions were "vicarious liability" claims and therefore within the scope of Plaintiff's policy

13  because breach of non-delegable duties is a form of vicarious liability.  Def.'s Mot.

14  Summ. J., ECF No. 99, at 16.  This argument is also not persuasive.  As Plaintiff notes in

15  its Opposition to Defendant's Motion for Summary Judgment, the California Supreme

16  Court has made clear that the negligent hiring and supervision claims asserted against

17  Sierra in the Moonlight Fire actions are forms of independent, non-vicarious liability.  See

18  Pl.'s Req. for Judicial Notice, ECF No. 87-4, Ex. M at 75 (a filing from one of the

19  Moonlight Fire actions in which the plaintiff United States of America argued that "Sierra

20  Pacific is also liable for its own negligent supervision and retention of Howell's"); Minkler

21  v. Safeco Ins. Co. of Am., 49 Cal. 4th 315, 325 (2010) (explaining a claim that "clearly

22  depends upon allegations that [a defendant] herself committed an independent tort" was

23  not "merely vicarious or derivative").

24          Defendant's next argument is based on the logging agreement between Sierra

25  and Howell.  Defendant emphasizes that this agreement required Howell to obtain

26  insurance which was primary and non-contributory with any insurance held by Sierra.

27  Defendant's argument fails for three reasons.  First, Plaintiff's policy with Howell does

28  not contain any provision indicating that its additional insured coverage for Sierra is

1    primary to and non-contributory with Sierra's own coverage.  Second, Plaintiff was not a

2    party to the logging agreement between Sierra and Howell, and Plaintiff's policy with

3    Howell should not be rewritten to comply with the logging agreement.  See E.E.O.C. v.

4    Waffle House, Inc., 534 U.S. 279, 294 (2002) ("It goes without saying that a contract

5    cannot bind a nonparty.").  Third, as Plaintiff notes:  Sierra accepted Howell's non-

6    compliant insurance by failing to exercise its power to terminate the logging agreement

7    or purchase complaint insurance and charging Howell.

8            Finally, Defendant emphasizes the "other insurance" provision in its policy, which

9    provides:

10           If other valid and collectible insurance applies to a claim or
             suit that is also covered by this Policy, this Policy will apply
11           excess of the other insurance.  However, this provision will
             not apply if the other insurance is specifically written to be
12           excess of this Policy.

13   Defendant claims that Plaintiff's policy is "valid and collectible" and applied to the

14   Moonlight Fire actions.  Def.'s Mot. Summ. J., ECF No. 99, at 19.  The Court rejects this

15   argument because the "other insurance" provision in Defendant's policy did not apply to

16   the Moonlight Fire actions.  Again:  Plaintiff was only required to defend Sierra in

17   lawsuits in which Sierra was vicariously liable for Howell, and Defendant's policy

18   dropped down and became primary coverage for suits in which Sierra was independently

19   liable for property damage.  Thus, the "other insurance" provision in Defendant's policy

20   did not eliminate Defendant's duty to defend Sierra in the Moonlight Fire actions.

21           Defendant's arguments do not undermine the Court's finding that Defendant had

22   a primary and independent duty to defend Sierra in the Moonlight Fire lawsuits.

23   Defendant's Motion for Summary Judgment is accordingly DENIED.

24   ///

25   ///

26   ///

27   ///

28   ///

1

**CONCLUSION**

2

3        Plaintiff's Motion for Summary Judgment (ECF No. 85) is GRANTED, and

4   Defendant's Motion for Summary Judgment (ECF No. 99) is DENIED.  Plaintiff is entitled

5   to summary judgment on its first claim for relief, as Defendant had a primary and

6   independent duty to defend Sierra in the Moonlight Fire lawsuits.

7        IT IS SO ORDERED.

8   Dated:  March 27, 2017

9

10                                                    MORRISON C. ENGLAND, JR.
                                                      UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28