UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN STATES INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA,<br><br>Defendant. | No. 2:12-cv-01489-MCE-AC<br><br>**MEMORANDUM AND ORDER** |

On March 23, 2016, this Court issued its Memorandum and Order (ECF No. 156) granting the Motion for Summary Judgment (ECF No. 85) filed by Plaintiff American States Insurance Company ("American States" or "American") on grounds that Defendant Insurance Company of the State of Pennsylvania ("ICSOP") had a primary duty to defend its insured, Sierra Pacific Industries ("Sierra), in various lawsuits arising from the so-called "Moonlight Fire".[1]  The Court concurrently denied ICSOP's correspondingly heard Motion for Summary Judgment (ECF No. 99).[2]  Now that ICSOP's primary duty to amend has been established, American States moves for summary

---

[1] The Memorandum and Order was amended on March 23, 2017, to correct two inadvertent typographical orders which did not alter the substance of the original Order.

[2] Federal jurisdiction over this matter is pursuant to diversity of citizenship in accordance with 28 U.S.C. § 1332.  As such, the substantive claims raised by the instant lawsuit are governed by the law of the forum state, here California.  See Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938).

1

judgment on its remaining equitable contribution claim. According to American, the Court should find as a matter of law that ICSOP should pay the fees and costs it incurred in defending Sierra based on the respective policy limits of the ICSOP and American policies.[3] For the reasons that follow, American's Motion for Summary Judgment (ECF No. 157) is DENIED.

**BACKGROUND**

The facts which underlie this lawsuit have already been outlined in the Court's previous Orders. Sierra was a named defendant in various lawsuits arising from a September 2007 wildfire in Plumas County, California commonly referred to as the "Moonlight Fire." American States agreed to defend Sierra in those lawsuits, beginning in September of 2009, pursuant to a Commercial General Liability policy it issued to Howell's Forest Harvesting. After Sierra obtained rights to harvest timber on a parcel of land located in Plumas County, California in September of 2007, Sierra hired Howell to perform certain operations on that land under the terms of a logging agreement. The logging agreement required Howell to obtain Commercial General Liability ("CGL") insurance and to name Sierra as an additional insured under its CGL policy.

By July 2007, American States had issued CGL insurance to Howell with a $1 million coverage limit. In accordance with the logging agreement, Sierra was included as an additional insured under a "Liability Plus Endorsement" page stating that an insured under the CGL policy includes "[a]ny person or organization . . . for whom you are required by written contract, agreement[,] or permit to provide insurance." ICSOP's Response to Statement of Undisputed Facts, ECF No. 166 ("SUF") No. 30. The insurance coverage for Sierra as an additional insured, however, applied "only to the extent [Howell] [is] held liable due to: . . . [Howell's] ongoing operations for [Sierra]." Id.

---

[3] Alternatively, American States also makes a nearly identical argument that the Court summarily adjudicate the issue of whether any equitable contribution here be governed by a policy limits analysis. This Memorandum and Order applies equally to both arguments.

Thus, while there is no dispute that Plaintiff's coverage for Sierra was primary in nature, it was limited to Sierra's vicarious liability as to Howell, and Sierra's independent liability was not covered under Plaintiff's CGL Policy with Howell.

In October 2006, ICSOP issued Sierra a commercial umbrella insurance policy that provided both primary and excess coverage in the amount of $10 million. ICSOP's policy for Sierra delineated its duty to defend as follows:

> [Defendant] shall have the right and duty to defend any claim or suit . . . when . . .
>
> a) The applicable limits of insurance of . . . any . . . underlying insurance . . . [have] been exhausted by payment of claims or suits to which this Policy applies; or
>
> b) Damages are sought for . . . property damage . . . covered by this Policy but not covered by . . . any other underlying insurance providing coverage to [Sierra].

SUF No. 20

Consequently, under clause (a), ICSOP's policy provided excess insurance when Sierra is vicariously liable with Howell and Plaintiff's policy limits are exhausted by payment of claims. Additionally, ICSOP's policy provided umbrella, or primary, insurance under clause (b) for property damage arising from Sierra's non-vicarious liability.

In September 2007, "Howell employees were allegedly operating bulldozers . . . pursuant to the [l]ogging [a]greement [with Sierra]," when a fire ignited nearby that "eventually burn[ed] approximately 65,000 acres in the area." Pl.'s Third Am. Compl., ¶ 8. Sparks caused by Howell's bulldozers allegedly caused the conflagration and the resulting Moonlight Fire. Multiple lawsuits were filed against both Sierra and Howell as a result of the fire, all of which Sierra tendered to both American States and ICSOP. Plaintiff accepted Sierra's defense in all of the fire-related lawsuits "without a reservation of rights to deny coverage for any damages awarded against Sierra, subject to available policy limits and California law. . . ." Id. at ¶ 26. Thus, Plaintiff agreed to defend and indemnify Sierra for not only suits where Sierra was vicariously liable with Howell—which

3

was covered under Plaintiff's CGL policy—but also where Sierra was independently liable.

Because American State's CGL policy only covered Sierra for vicarious liability with Howell, however, Sierra took the position that American States had a conflict of interest in defending Sierra despite its agreement to provide a defense without reservation. As a result of this conflict, Sierra argued it was entitled to independent counsel pursuant to California Civil Code § 2860. Sierra maintained this stance throughout the lifetime of the fire-related lawsuits—despite the fact that Plaintiff accepted defense of the lawsuits without reservation—and Sierra obtained outside counsel, the law firm of Downey Brand, for its defense. While American States agreed to pay Downey Brand at the rates it was prepared to pay counsel it had selected to defend Sierra, American declined to pay anything in addition to those prevailing rates. At no time did ICSOP defend or attempt to defend Sierra in any of the fire-related lawsuits.

On or about July 17, 2012, the fire-related suits against Sierra settled, exhausting both American States' and ICSOP's respective policy limits. ICSOP also ultimately settled Sierra's claim that it wrongfully refused to provide Sierra with a defense by contributing some $3,444,260.84 towards the cost of Sierra's independent counsel, over and above the sums that American States already paid Downey Brand for Sierra's defense. See SUF No. 114. American States and Sierra also settled any remaining claims against each other, with Sierra acknowledging that American had paid some $5,380,365.75 in legal fees and expert costs of $7,847,548.81 for total fees paid of $13,227,914.56. See SUF No. 66.

As indicated above, American States made its own claim against ICSOP for equitable contribution towards the defense costs American States had assumed and filed the present lawsuit on June 1, 2012. Once this Court determined that ICSOP had a primary duty to defend Sierra by Memorandum and Order filed March 23, 2016, American States filed the present motion asking the Court to adjudicate the only remaining claim, for equitable contribution in determining the extent of ICSOP's

indebtedness for Sierra's defense. American States urges the Court to allocate the $13,227,914.56 based on a "policy limits" methodology whereby those costs are split in proportion to the carriers' respective coverage limits. Under that analysis, according to American States, because ICSOP had $10 million in available coverage as opposed to American States' $1 million, defense costs should be attributed 10/11th to ICSOP (or 90.91 percent), for a total amount owed by ICSOP to American States of $12,025,376.87. American States also requests prejudgment interest on that amount at the rate of 7 percent, arguing that the sum owed by ICSOP is capable of ready calculation.

ICSOP, for its part, while continuing to dispute that it owes anything to American States, opines that if the Court is inclined to award American States anything it should do so based on a "relative fault" method that further takes into account the $3,444,260.84 already paid by ICSOP to Sierra to cover Sierra's own additional defense costs.

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S.

253, 288-89 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits[,] or declarations . . . or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987). The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

**ANALYSIS**

As indicated above, American States seeks equitable contribution from ICSOP, as sought in its Fourth Claim for Relief, on grounds that ICSOP shared a primary duty to defend Sierra in the Moonlight Fire lawsuits, yet failed to assume that duty at any time prior to the settlement reached in July of 2012 whereby both carriers paid their

respective policy limits in order to resolve those lawsuits.

### A. ICSOP's Defenses to Equitable Contribution

In opposing American State's motion for summary judgment, ICSOP initially makes a number of arguments which take issue with the underlying propriety of American's requested claim for equitable contribution, either in whole or in part. Those contentions lack merit.

First, ICSOP continues to argue that American States is not entitled to defense costs because American's named insured, Howell, agreed to indemnify ICSOP's insured, Sierra, for such costs in its logging agreement. That argument, as directed to American States, has already been rejected. As the Court previously recognized, American States was not a party to the logging agreement between Sierra and Howell, and American States' policy with Howell should not be rewritten to comply with the logging agreement. See E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind a nonparty."); ECF No. 176, 9:24-10:7. Additionally, American States' policy for Howell, which was extended to Sierra by way of an additional insured endorsement, itself did not contain any provision indicating that any additional insured coverage for Sierra was primary to and non-contributory with Sierra's own coverage, yet Sierra accepted that coverage. Id.

ICSOP is precluded in any event from asserting indemnity rights on behalf of its insured, Sierra, because Sierra and Howell entered into a settlement agreement where Sierra released, inter alia, all "causes of action, lawsuits, damages, expenses, costs, and fees, whether asserted or unasserted, actual or contingent, against Howell for Legal Expenses. ECF 157-3, Ex. 1, § 3.8.[4] Because ICSOP "stands in Sierra's shoes" in asserting the indemnity provisions in the logging agreement to avoid American States' contribution claims, its insured's settlement of any such provisions that may have existed

---

[4] "Legal Expenses were defined as including "attorneys' fees, expert expenses, legal costs and all other costs and expenses" incurred by Sierra, its independent counsel and experts arising out of or relating to the defense of the Moonlight Fire lawsuits. Id.

7

prevents ICSOP from now relying on those provisions. <u>Liberty Mut. Ins. Co. v. Fales</u>,
///
8 Cal. 3d 712, 717 (1973) ("[A]n insurer in its role as subrogee has no greater rights than those possessed by its insured, and its claims are subject to the same defenses.").[5]

Finally, the Court notes that the indemnity provisions in the Logging Agreement cannot be enforced even if they were available to ICSOP. Under the agreement, Howell had no obligation to defend Sierra for claims, damages or expenses in cases where Sierra "was more than fifty percent at fault." <u>See</u> SUF No. 84. Because there was never any liability determination at all in this matter, let alone a determination that Sierra was less than fifty percent at fault, any indemnity provisions in the Logging Agreement are inconclusive. As the court noted in <u>Edmondson Prop. Mgt. v. Kwock</u>, 156 Cal. App. 4th 197, 209 (2007), "unless it can be determined with certainty that [an] indemnity provision will apply, there is no basis upon which to bar equitable contribution." (citing <u>Traveler's Cas. & Sur. Co. v. Am. Equity Ins. Co.</u>, 93 Cal. App. 4th 1142, 1158 (2001).

ICSOP's attempt to avoid equitable contribution by claiming that any potential sharing of defense costs is governed by the terms of American States' policy is no more availing. ICSOP argues that the American policy's "Other Insurance" provision provides that if other primary insurance is available for a "loss", contribution by the two policies in "equal shares" is permitted as long as the other insurance allows contribution in the same manner. <u>See</u> SUF Nos. 25, 91. As American States points out, however, the "Other Insurance" clause cited by ICSOP addresses how American will share indemnity payments towards "a loss," not toward defense costs. "[T[he 'Other Insurance' provision constitutes a condition to <u>payment of claims</u> when coverage exists, but does not constitute a condition to coverage or [the insurer's] duty to defend. <u>Travelers Cas. and Surety Co. v. Transcontinental Ins. Co.,</u> 122 Cal. App. 4th 949, 956 (2004) (emphasis in

---

[5] While ICSOP argues that Sierra could not compromise its indemnity rights from Howell, there is no evidence here that Howell knew of ICSOP's defense payments to Sierra at the time it released Sierra so as to come within the narrow exception recognized by <u>Griffin v. Calistro</u>, 229 Cal. App. 3d 193, 196 (1991) precluding any release where a "tortfeasor settles with the insured with knowledge that the insured has been indemnified by an insurer."

8

original).

Lastly, ICSOP contends that to the extent any right to equitable contribution exists, ICSOP has no legal obligation to pay any portion of defense costs paid by American States before Sierra satisfied the ICSOP policy's $2 million Self-Insured Retention ("SIR") on or about November 1, 2010. Def.'s Opp, 18:21-25. According to ICSOP, that retention removes approximately $1,187,542.30 of the defense costs paid by American and now claimed to be subject to equitable contribution. The only SIRs identified in the ICSOP policy declarations, however, concern "Foreign General Liability," "Foreign Auto" and "Employers Liability", none of which appear to apply to any liability on Sierra's part in the Moonlight Fire lawsuits. See SUF No. 23. Consequently, ICSOP cannot rely on the SIR provisions of its policy to defeat equitable contribution either.

### B. Application of Equitable Contribution Principles to this Case

The right to equitable contribution arises when several insurers are obligated to indemnify or defend the same loss or claim, and one insurer has either paid more than its share of the claim in question or defended the action without participation from the other carrier or carriers obligated to do so. Equitable contribution permits reimbursement to the carrier paying in excess of its proportionate share of the obligation in question, and serves the equitable objective of equalizing the common burden shared by coinsurers and preventing one insurer from profiting at the expense of others. Scottsdale Ins. Co. v. Century Surety Co., 182 Cal. App. 4th 1023, 1031 (2010).

California law does not impose any fixed method for allocating defense costs between insurers. Instead, any determination in that regard is subject to the court's sound discretion in achieving just apportionment:

> [A] trial court must determine which method of allocation will most equitably distribute the obligation among the insurer "pro rata in proportion to their respective coverage of the of the risk," as "a matter of distributive justice and equity." As such, the trial court's determination of which method of allocation will produce the most equitable results is necessarily a matter of its equitable judicial discretion.

Id. at 1032 (internal citations omitted). There is consequently no "correct" or even

9

preferred method of allocating defense costs between coinsurers. "The reason for the courts' refusal to establish such a bright-line rule is the existence of differing factual circumstances varying from case to case, which unavoidably give rise to different equitable considerations that must be taken into account." Centennial Ins. Co. v. U.S. Fire Ins. Co., 88 Cal. App. 4th 105, 116 (2001); see also Axis Surplus Ins. Co. v. Glencoe Ins. Ltd., 204 Cal. App. 4th 1214, 1231-32 (2012). In order to address these various concerns, courts have adopted a number of different ways of reapportioning defense costs between participating and non-participating insurers. Those approaches include: 1) time on the risk; 2) policy limits; 3) combined time on the risk and policy limits; 4) premiums paid; 5) maximum loss; and 6) equal shares. Scottsdale, 182 Cal. App. 4th at 1032.

Here, as indicated above, in moving for summary judgment American States urges the Court to assess defense costs between it and ICSOP by calculating costs in proportion to the combined "policy limits" approach. In opposition, ICSOP takes the position that if American is entitled to equitable contribution at all, that contribution should instead be based on the responsibility of Sierra and Howell in having caused the loss under a "relative fault" analysis. ICSOP also asks the court, no matter what method it ultimately chooses, to consider the fact that ICSOP has already paid $3.4 million to settle Sierra's claim for additional defense costs in hiring independent counsel.

As a preliminary matter, the starting number subject to equitable apportionment appears to be beyond dispute. American States had paid some $5,380,365.75 in legal fees and expert costs of $7,847,548.81 for total fees paid of $13,227,914.56. See SUF No. 66. American alone provided a defense to Sierra in the Moonlight Fire actions. It is well established under California law that an insurer like ICSOP who refuses to participate in defending its insured waives any right to challenge the reasonableness of those defense costs paid by its coinsurer, here American States. As the court in Safeco Ins. Co. of Am. v. Superior Court, 140 Cal. App. 4th 874 (2006) observed:

///

> When a duty to defend is shown, nonparticipating coinsurers are presumptively liable for both the costs of defense and settlement. (E.g. Travelers Casualty & Surety Co. v. Century Surety Co. (2004) 118 Cal. App. 4th 1156, 1159 [ ]; Century Surety Co. v. United Pacific Ins. Co., (2003) 109 Cal. App. 4th 1246, 1260 [ ]; Fireman's Fund Ins. Co. v. Maryland Casualty Co., (1998) 65 Cal. App. 4th 1279, 1307-1309 [ ].) On the more precise issue of just how much the nonparticipating coinsurer has to pay, the courts have held that, **by its refusal to participate, the recalcitrant coinsurer waives the right to challenge the reasonableness of defense costs** . . . (United Services Automobile Assn. v. Alaska Ins. Co. (2001) 94 Cal. App. 4th 638, 644 [ ]; American Star Ins. Co. v. Insurance Co. of the West, [232 Cal. App. 3d 1320, 1332-1333 (1991) ]; Croskey et al., Cal. Practice Guide: Insurance Litigation [(The Rutter Group 2005)], ¶ 8:67.22, pp. 8-29 to 8-30.

Id. at 880 (emphasis added).

American States alone defended Sierra at a cost of more than $13 million over a three-year period. ICSOP cannot now question the necessity, extent or reasonableness of those expenditures in an equitable contribution action like this one given its refusal to provide a defense. In any event, American scrutinized the invoices it received from Sierra's independent counsel, Downey Brand, and paid only those costs that it determined were reasonable and necessary to Sierra's defense. See SUF No. 67. Significantly, too, when ICSOP negotiated a release of Sierra's bad faith failure to defend the case by paying an additional $3.4 million of Downey Brand's fees over and above those fees already paid by American States, it relied on American's evaluation as to the propriety of the Downey Brand invoices (SUF No. 63), a factor which also weighs against any further scrutiny as to those expenses.

Perhaps recognizing the force of American's position in this regard, ICSOP really does not question the costs incurred in defending Sierra. Instead, it appears to advocate only that the additional defense costs it paid to settle Sierra's lawsuit be taken into account in determining anything it owes to ICSOP by way of equitable contribution. That payment, however, has no direct bearing on what ICSOP would have paid had it assumed Sierra's defense in the first instance. Had it agreed to defend Sierra, ICSOP would have been obligated to pay only an equitable share of Downey Brand's

11

independent counsel fees,[6] which under California Civil Code § 2860(c) were limited to the rates American States actually paid "to attorneys retained by it in the ordinary course of business in the defense of similar actions in the community where the claim arose or is being defended." In this case, that hourly fee was $150 which constituted a single rate for Sierra's defense even if "multiple insurers may be required to contribute to its payment." San Gabriel Water Co. v. Hartford Acc. Indem. Co., 82 Cal. App. 4th 1230, 1241 (2000). Because ICSOP chose not to defend Sierra, however, it could not rely on the independent counsel rate established by § 2860(c) and instead paid an additional $150 per hour above and beyond what American States had paid to satisfy its defense obligation in order to resolve Sierra's bad faith claims for failing to provide a defense. Consequently, the starting point for calculating contribution remains at the total expenditure of $13,227,914.56 was incurred by American in defending Sierra.

Under the circumstances present here, American States argues that awarding equitable contribution on anything less than a proportional "policy limits" basis would reward ICSOP for recalcitrance in failing to participate in the provision of Sierra's defense. Because the $10 million in coverage contained in ICSOP's umbrella policy was ten times the $1 million limit of American States' policy, American consequently argues that its defense expenditures should be apportioned 90.91 percent to ICSOP since its limits are some 10/11ths of the American and ICSOP policies combined. Using that 90.91 percent figure, American claims ICSOP owes it $12,025,376.87.

American States correctly identifies California authority finding that where two insurers cover the same risk, defense costs may be shared on a pro rata basis in proportion to the respective limits of coverage afforded See, e.g., CNA Cas. of Calif. v. Seaboard Sur. Co., 176 Cal. App. 3d 598, 619 (1986). Nonetheless, according to ICSOP, its particular policy provided umbrella coverage, which typically provides greater coverage limits towards settlement or judgment along with a reduced expectation to bear

---
[6] ICSOP's defense obligations also extended to costs incurred by ICSOP in addition to attorney's fees themselves.

defense costs given the fact that such coverage typically kicks in only when a case concludes. Under those circumstances, the Court believes a policy limits approach is not the most equitable way here to apportion defense costs between American States and ICSOP. This is particularly true since the primary coverage provided by the ICSOP policy—for Sierra's independent liability for causing the Moonlight Fire as opposed to any vicarious liability it bore for Howell's negligence in doing so—likely represented a smaller subset of Sierra's overall liability exposure. Even the CNA case cautioned against applying hard and fast rules in allocating costs between multiple insurers because of the "varying equitable considerations which may arise, and which affect the insured and the . . . carriers, and which depend upon the particular policies of insurance, the nature of the claims made, and the relation of the insured to the insurers." Id.; citing Signal Cos., Inc. v. Harbor Ins. Co., 27 Cal. 3d 359, 369 (1980).

The Court therefore finds that equitable sharing of defense costs based on the parties' respective policy limits is not indicated, and it denies American States' motion for summary judgment on that basis. While not necessary to deny American's motion, the Court notes that ICSOP's primary argument in opposition to American's motion is no more persuasive as a basis for determining equitable contribution. According to ICSOP, to the extent any equitable contribution is indicated in this matter the allocation should be made pursuant to the relative fault of ICSOP and American's named insureds, Sierra and Howell for causing the Moonlight Fire.

As already indicated above, relative fault is not an approach even recognized by the Scottsdale court as applicable to determining equitable contribution. Scottsdale, 182 Cal. App. 4th at 1032. Indeed, several California courts have expressly rejected allocation based on fault as contrary to the principles underlying equitable contribution. See, e.g., Fire Ins. Exch. v. Am. States Ins. Co., 39 Cal. App. 4th 653, 663 (1995); Hartford Acc. & Indem. Co. v. Superior Court, 29 Cal. App. 4th 435, 440 (1994). As Scottsdale observed, "[e]quitable contribution does not depend on fault; it is based on an equitable apportionment of contractual undertakings." Scottsdale, 182 Cal. App. 4th at

1033.  Indeed, predicating equitable contribution on comparative fault would run counter to sound public policy since such an approach "would hamper settlements and require the defendant to prove its own fault before the defendant's insurer could seek equitable contribution."  Fire Ins. Exch., 39 Cal. App. 4th at 663.

Of even greater practical import is the fact that since the Moonlight Fire cases ultimately settled there was never any determination as to liability vis-à-vis either Sierra or Howell.   Therefore, were the Court to employ relative fault in determining equitable in this case it would in essence be forced to either try the underlying claims or guess at their likely liability outcomes, both of which it declines to do.

## CONCLUSION

For the reasons set forth above, Plaintiff American States' Motion for Summary Judgment (ECF No. 157) is DENIED.  Should the parties wish to file an additional summary judgment motion on grounds that another recognized equitable apportionment method should apply in determining ICSOP's share of the fees and costs borne by American States in defending Sierra, they may do so within the next sixty (60) days.  Otherwise, the parties are directed to file a joint statement of trial readiness in this matter.

IT IS SO ORDERED.

Dated:  May 22, 2017

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE